IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ROGER DRAKE,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR COURT ORDER ALLOWING TESTING OF THE EVIDENCE BY DEFENSE EXPERT<br><br>Case No. 4:24-cr-00056-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br>Magistrate Judge Paul Kohler |

This matter is before the Court on Defendant's Motion for Court Order Allowing Testing of the Evidence by Defense Expert. For the reasons discussed below, the Court denies the Motion.

I. BACKGROUND

Defendant is charged with second degree murder and discharging a firearm in relation to a crime of violence. These charges stem from the shooting death of M.L. (the "decedent"). The Indictment alleges that on June 2, 2024, Defendant shot and killed the decedent. The night before the incident, Defendant and the decedent were involved in an altercation. The decedent then obtained a pipe but was ultimately subdued. At the end of the altercation, the decedent threatened that he would kill Defendant and burn down his house. Soon thereafter, Defendant's house was on fire.

Sometime that night, Defendant obtained a gun and gun belt from his brother's house. Early in the morning of June 2, Defendant walked to the decedent's residence where there was a confrontation. Defendant shot the decedent multiple times at close range as the decedent started

1

coming toward Defendant. Defendant confessed to the shooting in a mirandized interview with law enforcement.

In support of a proposed claim of self-defense, Defendant has retained an expert to perform a shooting event examination and reconstruction. Through this Motion, Defendant seeks the firearm collected in this case, all rounds of ammunition from the firearm (both fired and unfired), and all additional cartridges from the gun belt. Defendant proposes that his expert be allowed to expend four of the cartridges recovered from the gun belt in his testing. Defendant proffers that this analysis will allow the expert to analyze stippling patters to narrow down the range from which the firearm had been fired and offer an opinion as to the origins of stippling on the decedent's back.

## II.  DISCUSSION

Unlike civil cases, "[a] criminal defendant is entitled to rather limited discovery."[1] Discovery in criminal cases is governed by the provisions of Federal Rules of Criminal Procedure 6, 12, 16, and 26.2; the Jencks Act, 18 U.S.C. § 3500; and the holding of *Brady*[2] and its progeny. The Supreme Court has made clear that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."[3]

Defendant's Motion relies on the Due Process Clause of the Fifth and Fourteenth Amendments and Rule 16. Each are discussed in turn. The Supreme Court has noted that "the Due Process Clause has little to say regarding the amount of discovery which the parties must be

---

[1] *Degen v. United States*, 517 U.S. 820, 825 (1996).

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

afforded."[4] However, due process is violated if the prosecution suppresses evidence favorable to an accused.[5] Yet the police do not have to "use a particular investigatory tool" and "do not have a constitutional duty to perform any particular tests."[6] Thus, the Due Process clause does not require the prosecution to conduct the type of testing Defendant seeks[7] and Defendant points to nothing to suggest that the Due Process clause requires the government to turnover and permit the use (and potential loss) of important physical evidence in its possession.

Federal Rule of Criminal Procedure 16 does require the government to disclose certain evidence. Relevant here, Rule 16(a)(1)(E) requires, upon a defendant's request, the government allow

> the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

Here, Defendant does not seek to inspect or copy the firearm and ammunition. He seeks to take possession of them, utilize them, and expend four shell casings. This goes beyond what is required under Rule 16. While courts have allowed defendants to conduct independent tests of small amounts of controlled substances,[8] allowing such tests is generally "negligible and can be

---

[4] *Wardius v. Oregon*, 412 U.S. 470, 474 (1973).

[5] *Brady*, 373 U.S. at 87.

[6] *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988).

[7] *Armijo v. Tapia*, 288 F. App'x 530, 534 (10th Cir. 2008) (stating that "the *Brady* line of cases does not stand for the proposition that the prosecution must perform any forensic tests that may inure to the benefit of the accused").

[8] *United States v. Gaultney*, 606 F.2d 540, 545 (5th Cir. 1979) ("In cases involving a controlled substance, courts have held a concomitant part of the examination or inspection to be

handled by means of a stipulation as to the amount, weight, or percentage of the substance removed or destroyed for testing purposes."[9] Further, such tests are "subject to a variety of procedural safeguards aimed at preserving the integrity of the Government's evidence."[10]

Here, not only does Defendant's request go beyond what is called for by Rule 16, it would allow for the turnover of key evidence—the alleged murder weapon and associated ammunition—with little in the way of procedural safeguards, except that the packaging containing the evidence be signed for. With such minimal precautions, this critical evidence could be lost or contaminated in transit or during testing. Put simply, the risks of allowing such turnover are simply too great to permit Defendant's request.

Even if Defendant's request fell within the confines of Rule 16, he has failed to demonstrate materiality. Under Rule 16, "a criminal defendant enjoys a right to discovery of information that is 'material to preparing the defense.'"[11] Generally speaking, "[e]vidence is 'material' if it would be helpful to the defense."[12] In other words, there must be "a strong indication that [the evidence] will play an important role in uncovering admissible evidence,

---

the right of the accused to have an independent chemical analysis performed on the seized substance.") (collecting cases).

[9] *United States v. Carrell*, No. CR 05-1484 MCA, 2006 WL 8427721, at *1 (D.N.M. Aug. 2, 2006).

[10] *Id.*

[11] *United States v. Simpson*, 845 F.3d 1039, 1056 (10th Cir. 2017) (quoting Fed. R. Crim. P. 16(a)(1)(E)(i)).

[12] 2 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Pro. § 254 n.13 (4th ed. 2022) (citation omitted); *see Simpson*, 845 F.3d at 1056–57.

aiding witness preparation, . . . or assisting impeachment or rebuttal."[13] "Although the materiality standard is not a heavy burden, the [g]overnment need disclose Rule 16 material only if it enables the defendant significantly to alter the quantum of proof in his favor."[14]

Defendant vaguely asserts that the testing "will educate the jury about the distance from which [Defendant] shot [the decedent] and it will help the jury understand if there was another shot which missed [the decedent]."[15] Defendant argues that "[t]he more the jury learns about the struggle between the two men, the better it can assess the imminence and the nature of the danger [Defendant] was facing, and the reasonableness of [Defendant's] belief that he needed to shoot [the decedent] to protect himself."[16]

However, there is no dispute that Defendant shot the decedent at close range; Defendant admitted as much to law enforcement,[17] as did a witness. And the medical examiner has similarly noted that the shooting was likely at close range.[18] It is unclear how a more precise measurement of the distance between Defendant and the decedent would significantly alter the quantum of proof in Defendant's favor. Therefore, the Court cannot conclude that Defendant's request, even if permitted by Rule 16, would meet the requirement of materiality.

---

[13] *United States v. Cates*, 73 F.4th 795, 812 (10th Cir. 2023) (quoting *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996)).

[14] *Id.* (quoting *Graham*, 83 F.3d at 1474).

[15] Docket No. 43, at 5.

[16] *Id.*

[17] Docket No. 42, at 5–7.

[18] *Id.* at 19 n.9.

## III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Court Order Allowing Testing of the Evidence by Defense Expert (Docket No. 40) is DENIED. The time from the filing of the Motion—August 13, 2025—to the date of this Order is excluded under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D).

DATED this 10th day of September, 2025.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge